Syllabus.

[No. 3423.]

BOB WHITE v. THE STATE.

1. PRACTICE — INDICTMENT. — The Code of Procedure, article 660, directs that the indictment shall be read to the jury after they have been organized and im-paneled, and this requirement is one of the provisions of said article which has been held mandatory by this court; but it is not enacted that the reading of the indictment to the jury shall be recited in the judgment, as is directed with regard to the defendant's plea. The proper practice, however, is to make the judgment entry, immediately preceding the plea, set forth the fact that the indictment was read to the jury. Nevertheless that fact may be sufficiently authenticated in any part of the record, and in the present case it is effectively done in the charge of the court to the jury.

2. EVIDENCE — PRACTICE. — Two witnesses for the State having given certain dates different from those they stated at the examining trial, the court, at the instance of the prosecution and over objection by the defense, permitted them to read over their testimony at the examining trial, whereupon they stated that the dates deposed to at the examining trial, when the facts and dates were fresh in their memories, were the correct dates. The bill of exceptions shows that, after refreshing their recollection as aforesaid, they testified from their memories. *Held*, that there was no error in the ruling and action of the trial court in this matter.

3. THEFT — EVIDENCE — HEARSAY — SELF-SERVING DECLARATIONS. — In a trial for cattle-theft it was in proof that the cattle were removed from the pasture of defendant by him and one D., and that they drove them into the pasture of one B. The defense proposed but were not allowed to prove by said B. that, when the cattle were put in his pasture, the said D. claimed them and stated that the defendant was employed by him to assist in driving the cattle; and, moreover, that the defendant stated that the cattle belonged to D., and that he, the defendant, was only a hired hand. The trial court excluded the proposed proof on the ground that the statement of D. was hearsay, and that the declaration of the defendant was a self-serving declaration, not having been made when the animals were taken, nor when they were first seen in his possession, nor when his ownership of them was first called in question. *Held*, that the proposed evidence was correctly excluded.

4. CHARGE OF THE COURT. — The defendant is entitled to have a distinct and affirmative presentation to the jury by the charge of the court of the issues which arise upon the evidence, to the end that the jury shall not ignore his defenses, but may be guided to the proper verdict if they find his evidence true; and however improbable his evidence may seem to the trial court, it is his right to have its truth or falsity determined by the jury, without being forestalled by the charge of the court. There being evidence in the present case supporting the defendant's theory that his possession of the stolen property was an innocent one, the trial court erred in failing to submit that issue distinctly for the determination of the jury.

5. SAME. — In a trial for theft the evidence of defendant's complicity in the *taking* of the property was wholly of a circumstantial character, yet the trial court failed to instruct the jury with regard to that species of evidence. *Held* error.

Appeal from the District Court of Fannin. Tried below before the Hon. D. H. Scott.

The conviction in this case was for theft, from the possession of J. H. Wolf, of a yearling, the property of William Lanius, in Fannin county, Texas, on the 25th day of April, 1884. A term of three years in the penitentiary was the punishment awarded by the jury.

William Lanius, for the State, testified that some time in February, 1884, J. H. Wolf proposed to sell him certain described cattle. Witness agreed to send a man to look at the cattle, and to buy them if they came up to Wolf's representations. Witness, as per agreement, sent Percy Welch to look at the cattle. Welch reported that he had accepted the cattle, including two certain yearlings, and, as directed by Wolf, witness paid the purchase money to Isham Beasley. On the 28th day of April following, witness sold the said cattle to Ben Stephens. Witness gave no one permission to take any of the said cattle.

Percy Welch testified, for the State, that William Lanius sent him to Wolf's house to examine and report upon some cattle Wolf had offered to sell Lanius. This was in February, 1884. After examining the cattle, which included the yearling involved in this prosecution, witness accepted the same for Lanius. The cattle were to remain on Wolf's range until called for by Lanius, when Wolf was to assist in collecting them. Witness had no further connection with the cattle.

J. H. Wolf was the next witness for the State. He testified to the same effect as the witnesses Lanius and Welch as to the cattle transaction between himself and Lanius. Among the cattle sold Lanius was that involved in this controversy, a dark brown or black bull yearling, with white face and belly, unmarked and unbranded. These animals ran on the range in Fannin county near the witness's house, and about four miles north from Lanius's house. Having missed this yearling from the range, and hearing that the defendant and Bill Dicus had driven some cattle towards Red River, the witness, in company with Mr. Farmer and Mr. Gilbert, went to Ellerton's ranch in the Choctaw Nation, where he found the stolen yearling on the range, and in Ellerton's mark and brand. Witness and his party drove this yearling, and two others belonging to other parties, back to Texas, and delivered them to their owners. Witness gave no one his consent to the taking of this yearling.

J. H. Walker was the next witness for the State. He testified

that, on the 25th day of May, 1884, he and W. C. Keller, while horse hunting, went into and through the wood pasture of the defendant and Newt White. They saw the alleged stolen animal, freshly marked, tied to a bush in a hollow in the said pasture. They also saw a dun-colored muley yearling standing near by. When the witness next saw the Lanius yearling, about the last of May, it was in Ellerton's mark and brand. On cross-examination the witness fixed the time when he saw the yearling described as the 25th day of May, by the fact that a protracted meeting was then in progress in the neighborhood.

Mrs. Mary Walker testified, for the State, that she passed through the White pasture on or about May 25, 1884, *en route* to a neighbor's house, and saw the stolen yearling, freshly marked, tied to a bush in a deep hollow that ran through that pasture. Returning in about an hour, she saw, as she approached the pasture, the defendant and Newt White and Bill Dicus driving this and a muley and a brindled yearling out of the pasture. When he saw the witness, Newt White exclaimed: "I'll be d—d if there isn't Mrs. Walker," and Dicus replied: "And I'll be d—d if I care." The parties named were driving the cattle in a northerly direction through the woods. This was about 9 o'clock in the morning.

Over the objection of the defendant, the State's counsel was permitted at this point to read from the witness's written testimony, taken down before the examining trial, what she said about the time of seeing the yearlings in the White pasture. This writing showed that on that trial she stated the date as April 25th. Witness thereupon corrected her statement on this trial and made it conform to her statement before the examining court. The same proceeding with the same result was had with reference to the testimony of J. H. Walker. This action of the court is the subject-matter of the second head-note of this report.

Mrs. Mary Dicus was the next witness for the State. She testified that she was the wife of Bill Dicus, referred to by previous witnesses. During the month of April, 1884, witness's husband and the defendant drove some cattle to Dicus's house and penned them, saying that they were going to sell said cattle to Ellerton. On the next day they drove the cattle to the river for the avowed purpose of selling them to Ellerton. Ellerton stayed all night at Dicus's house on the following Saturday night. Dicus, when he left home to go to the White neighborhood, said that defendant owed him some $20 or $30. Bill Cummings was present when Dicus and defendant were discussing the sale of the cattle. Cummings asked to

whom the cattle belonged, and defendant replied: "They are mine, by G—d."

Bill Cummings testified, for the State, that he was present on the occasion mentioned by Mrs. Dicus, and that her account of what transpired was substantially correct. Defendant asked witness if he knew whether or not Ellerton was on the Texas side of the river, and, being answered in the affirmative, said to Dicus: "We must see Ellerton about these cattle."

Mr. Ellerton testified that Bill Dicus proposed to sell him some cattle,— stating that a party who was in his debt proposed to pay him in yearlings, but that he did not care to make such trade unless he could sell the yearlings. Witness replied that he was not then buying yearlings, but would take them if he, Dicus, would take his pay in corn. Soon afterwards, Dicus and defendant appeared at the witness's house in the Indian Territory, and proposed to sell witness three yearlings. Witness agreed to cross the river, look at them, and buy them if corn would be taken in exchange. Defendant said: "You can make any trade that will suit Dicus, except as to four or five dollars which I want to buy millet seed with." Witness bought the yearlings, paying Dicus $20 worth of corn, and the rest in money at defendant's request. Witness bought these yearlings as defendant's property, Dicus saying that he wanted only the amount defendant owed him out of the proceeds. Defendant said that he bought the animals from his brother-in-law, and that they were good property. Wolf and others afterwards claimed and recovered the said animals. Farmer and Gilbert identified the animals, and the State closed.

Tom Burwell was the first witness for the defense. He testified that on or about April 23, 1884, he saw Bill Dicus near the defendant's house driving the three yearlings described by previous witnesses. Dicus put these cattle in the defendant's pasture. Defendant and Newt White were there fixing their fence south of their house. On the next day witness heard Dicus offer to pay defendant $1.50 a day to help him drive the said animals, and he heard defendant accept the offer. Witness had never seen the animals before nor has he seen them since. Dicus did not stop when witness saw him with the cattle, but passed on. The conversation about employing defendant occurred on the porch of defendant's house, south of the pasture. Witness was of opinion that Harry Campbell was helping the defendant and Newt White repair the fence. Witness and defendant were brothers-in-law.

Harry Campbell testified, for the defense, that while he was in

defendant's field he saw Dicus drive the three head of yearlings described into defendant's pasture, after which Dicus went to defendant's house and stayed over night. Witness was a friend to defendant, and was in defendant's employ at the time.

Mrs. Dosia Reed, the defendant's sister, testified that she lived at the defendant's house on February 23, 1884. On that day she saw Bill Dicus drive the three yearlings described into the defendant's pasture. Defendant, Newt White and Harry Campbell were at the time working on the fence at the millet patch. Witness heard Dicus employ defendant to aid in driving the animals. Dicus and Campbell did not go to the defendant's house from the pasture. Dicus spent that night at Shaw's house.

Mrs. Reeder, another sister of the defendant, testified that about 9 o'clock on the morning of April 24, 1884, she saw Dicus driving the yearlings described out of defendant's pasture.

The motion for new trial raised the questions discussed in the opinion.

*C. D. Grace*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. Article 660, Code Criminal Procedure, provides as the very first step in a criminal trial after the organization and impaneling of the jury, that the indictment shall be read to the jury. This requirement is one of the provisions of said article which has been held to be mandatory. (*Wilkins* v. *The State*, 15 Texas Ct. App., 420.) But, whilst it is required that the indictment shall be read, there is no express provision of law that the fact that it was read should be noted and recited in the judgment, as is the case with regard to the plea of defendant, which is required to be so recited. (Code Crim. Proc., art. 791.) It would unquestionably be the better and more appropriate practice that this fact should be made to appear in the judgment just preceding the defendant's plea, which is an answer to the indictment. And the uniform practice is thus to recite it in the judgment, and this is also in conformity with article 516, Code Crim. Proc., which provides that "the indictment shall be read and defendant asked whether he is guilty or not, as therein charged." But, whether in the judgment or elsewhere, if the fact is made to affirmatively appear in the record that the indictment was read before the plea was entered, that will be sufficient. In this case the fact that the indictment was read to the jury, and that defendant entered his plea of not guilty thereto, is positively stated in the first paragraph of the

charge of the court to the jury. This, we think, shows a sufficient compliance with the statutory requirement.

At an examining trial held by a justice just after the arrest of defendant and others charged with the crime, and shortly after the date of its alleged commission, the two State's witnesses Walker and wife appeared and testified, and their testimony was reduced to writing as part of said examining trial. On this trial each of said witnesses, in stating the date of the facts about which they testified, stated the dates differently from the date as deposed by them at the examining trial. Over objections of defendant, and at the instance of the prosecuting attorney, they were permitted to read their testimony taken at said examining trial, for the purpose of refreshing their memories, and after doing so they stated that the dates as stated at the examining trial were correct,— that the facts were at that time recent and fresh in their minds. It is clear from the explanation of the bill of exception, as given by the trial judge, that the witnesses, after refreshing their memories as aforesaid, then from their memory testified to the facts. (*Hubby* v. *The State*, 8 Texas Ct. App., 597.)

"A witness who makes, or is concerned in making, written notes of an event near the time of its occurrence, is permitted to refer, when under examination, to such notes in order to refresh his memory." (1 Whart. Evid. (2d ed.), § 516.) Even "conversations with third persons may become admissible when introduced for the purpose of identifying facts or dates. But such conversations are not evidence of the truth of facts which they state. They are evidence only on the single point of fixing particular dates, places or other extrinsic incidents of the facts testified to by the witness." (Whart. Crim. Evid. (8th ed.), § 261a.) Where a witness may assist his memory from a writing, "it does not seem necessary that the writing should have been made by the witness himself, nor that it should be an original writing, provided after inspecting it he can speak to the facts from his own recollection." (1 Greenl. Evid. (13th ed.), §§ 436, 437.) It was not error to permit the witnesses to refresh their memories from the testimony given by them at the examining trial, as shown in the bill of exceptions.

Defendant proposed to prove by his witness Bowland that, after the cattle were taken from defendant's pasture, and driven by defendant and Dicus and put into Bowland's pasture, Dicus claimed to own the cattle, and also stated that defendant was employed by him as a hired hand to assist in driving said cattle. Defendant also proposed to prove by said witness that he, defendant, told witness that the cattle belonged to Dicus, and that he, defendant, was only

a hired hand. This testimony was refused admission by the court on objection by the prosecution — the court holding that, in so far as the declarations or statements of Dicus were concerned, it was hearsay, and in so far as those of defendant were concerned, they were not *res gestæ*, were not made when the property was taken, nor when first found or seen in defendant's possession, nor when his ownership was first called in question. This ruling of the court was correct. Such declarations are classed by the writers on evidence as "self-serving," and are in law inadmissible as evidence. (Whart. Crim. Evid. (8th ed.), § 690 *et seq.; Harmon* v. *The State*, 3 Texas Ct. App., 51; *Suger* v. *The State*, 11 Texas Ct. App., 110.)

We find two errors of omission in the charge of the court.

One theory of the defense was that the accused, in all his connection with the stolen property, acted only as an employee or hired hand of Dicus, and more than one of his witnesses testified to facts sustaining this defense. Whether this evidence was true or false was not for the court to decide, nor could the court ignore it properly in the charge to the jury. "A defendant is entitled to a distinct and affirmative, and not merely an implied or negative, presentation of the issues which arise upon his evidence, in order to prevent the jury from ignoring his defenses, and to conduct them to a proper verdict if they find his evidence to be true. However improbable his evidence may seem, it is his right to have the jury determine its truth or falsity in the first instance, without being forestalled by the court." (*Reynolds* v. *The State*, 8 Texas Ct. App., 412; *Greta* v. *The State*, 9 Texas Ct. App., 429; *Jackson* v. *The State*, 15 Texas Ct. App., 84; *Kenneda* v. *The State*, 16 Texas Ct. App., 258.)

As made by the evidence, the case against this defendant, that is, his complicity with the *taking* of the stolen animal, is one wholly of circumstantial character. No witness testifies to having seen him *take* the animal. His first connection with it, as disclosed, was in his pasture *after it had been taken* from its accustomed range by some one. That he is the party who took it is a fact derivable alone from other circumstances. It was plainly the duty of the court, under the facts of the case, to have charged the jury with regard to circumstantial evidence. This rule is so well settled that we deem it unnecessary to cite authorities; they may be found in almost every volume of the reports since *Hunt's* case in 7 Texas Court of Appeals, 212.

For errors in the charge of the court the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered April 22, 1885.]